## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | 18 Civ. 4145 (JPC) |
| PREMIUM POINT INVESTMENTS LP, ANILESHA AHUJA a/k/a NEIL AHUJA, AMIN MAJIDI, JEREMY SHOR, ASHISH DOLE, and FRANK DINUCCI, JR., | |
| Defendants. | |

## [PROPOSED] FINAL JUDGMENT AS TO DEFENDANT JEREMY SHOR

The Securities and Exchange Commission (the "Commission") having filed an Amended Complaint and Defendant Jeremy Shor ("Defendant") having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment; waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

## I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) promulgated thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)      to employ any device, scheme, or artifice to defraud; or

    (b)      to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

## II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Sections 17(a)(1) and (3) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77q(a)(1) and (3)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)     to employ any device, scheme, or artifice to defraud; or

(b)     to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

## III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Sections 206(1) and (2) of the Investment Advisers Act of 1940 (the "Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)] from, while

acting as investment advisers, by the use of any means or instruments of interstate commerce, directly or indirectly:

      (a)    employing any device, scheme, or artifices to defraud any client or prospective client; and

      (b)    to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.

      IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

IV.

      IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Advisers Act Section 206(4) [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8(a)(2) [17 C.F.R. § 275.206(4)-8(a)(2)] promulgated thereunder by, while acting as an investment adviser to a pooled investment vehicle, engaging in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

      IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

V.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that, based on Defendant's sworn representations in his Statement of Financial Condition dated May 30, 2023, and other documents and information submitted to the Commission, the Court is not ordering Defendant to pay a civil penalty. The determination not to impose a civil penalty is contingent upon the accuracy and completeness of Defendant's Statement of Financial Condition. If at any time following the entry of this Final Judgment the Commission obtains information indicating that Defendant's representations to the Commission concerning his assets, income, liabilities, or net worth were fraudulent, misleading, inaccurate, or incomplete in any material respect as of the time such representations were made, the Commission may, at its sole discretion and without prior notice to Defendant, petition the Court for an order requiring Defendant to pay the maximum civil penalty allowable under the law. In connection with any such petition, the only issue shall be whether the financial information provided by Defendant was fraudulent, misleading, inaccurate, or incomplete in any material respect as of the time such representations were made. In its petition, the Commission may move this Court to consider all available remedies, including, but not limited to, ordering Defendant to pay funds or assets, directing the forfeiture of any assets, or sanctions for contempt of this Final Judgment. The Commission may also request additional discovery. Defendant may not, by way of defense to such petition: (1) challenge the validity of the Consent or this Final Judgment; (2) contest the allegations in the Amended Complaint filed by the Commission; (3) assert that payment of a civil penalty should not be ordered; (4) contest the imposition of the maximum civil penalty allowable under the law; or (5) assert any defense to liability or remedy, including, but not limited to, any statute of limitations defense.

VI.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

VII.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the Amended Complaint are true and admitted by Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

VIII.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

IX.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: _____November 7_____, 2023

_____
HON. JOHN P. CRONAN
UNITED STATES DISTRICT JUDGE

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**v.**

**PREMIUM POINT INVESTMENTS LP,
ANILESHA AHUJA a/k/a NEIL AHUJA, AMIN
MAJIDI, JEREMY SHOR, ASHISH DOLE, and
FRANK DINUCCI, JR.,**

**Defendants.**

**18 Civ. 4145 (JPC)**

---

### CONSENT OF DEFENDANT JEREMY SHOR

1.       Defendant Jeremy Shor ("Defendant") acknowledges having been served with the Amended Complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.       Defendant pleaded guilty to criminal conduct relating to certain matters alleged in the Amended Complaint in this action.  Specifically, in *United States v. Ahuja*, *et al.*, 18 Cr. 328 (KPF) (S.D.N.Y.), Defendant pleaded guilty to one count of securities fraud [15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5].  In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is attached as Exhibit A to this Consent.

3.       Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things, permanently restrains and enjoins Defendant from violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)], Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1) and (3)]; and Sections 206(1), (2), and (4)

1

of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2), and

80b-6(4)] and Rule 206(4)-8(a)(2) thereunder [17 C.F.R. § 275.206(4)-8(a)(2)].

4.      Defendant acknowledges that the Court is not imposing a civil penalty based on

Defendant's sworn representations in Defendant's Statement of Financial Condition dated May 30,

2023, and other documents and information submitted to the Commission.  Defendant further

consents that if at any time following the entry of the Final Judgment the Commission obtains

information indicating that Defendant's representations to the Commission concerning Defendant's

assets, income, liabilities, or net worth were fraudulent, misleading, inaccurate, or incomplete in

any material respect as of the time such representations were made, the Commission may, at its

sole discretion and without prior notice to Defendant, petition the Court for an order requiring

Defendant to pay the maximum civil penalty allowable under the law.  In connection with any such

petition, the only issue shall be whether the financial information provided by Defendant was

fraudulent, misleading, inaccurate, or incomplete in any material respect as of the time such

representations were made.  In any such petition, the Commission may move the Court to consider

all available remedies, including but not limited to ordering Defendant to pay funds or assets,

directing the forfeiture of any assets, or sanctions for contempt of the Court's Final Judgment.  The

Commission may also request additional discovery.  Defendant may not, by way of defense to such

petition:  (1) challenge the validity of this Consent or the Final Judgment; (2) contest the

allegations in the Amended Complaint; (3) assert that payment of a civil penalty should not be

ordered; (4) contest the imposition of the maximum civil penalty allowable under the law; or (5)

assert any defense to liability or remedy, including but not limited to any statute of limitations

defense.

5.      Defendant waives the entry of findings of fact and conclusions of law pursuant to

Rule 52 of the Federal Rules of Civil Procedure.

2

6.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

7.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

8.      Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

9.      Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10.     Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

11.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability.  Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and

3

the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory

organizations.  Such collateral consequences include, but are not limited to, a statutory

disqualification with respect to membership or participation in, or association with a member of, a

self-regulatory organization.  This statutory disqualification has consequences that are separate

from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary

proceeding before the Commission based on the entry of the injunction in this action, Defendant

understands that he shall not be permitted to contest the factual allegations of the Amended

Complaint in this action.

12.     Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e),

which provides in part that it is the Commission's policy "not to permit a defendant or respondent

to consent to a judgment or order that imposes a sanction while denying the allegations in the

complaint or order for proceedings."  As part of Defendant's agreement to comply with the terms

of Section 202.5(e), Defendant acknowledges the guilty plea for related conduct described in

paragraph 2 above, and: (i) will not take any action or make or permit to be made any public

statement denying, directly or indirectly, any allegation in the Amended Complaint or creating the

impression that the Amended Complaint is without factual basis; (ii) will not make or permit to be

made any public statement to the effect that Defendant does not admit the allegations of the

Amended Complaint, or that this Consent contains no admission of the allegations, without also

stating that Defendant does not deny the allegations; (iii) upon the filing of this Consent, Defendant

hereby withdraws any papers filed in this action to the extent that they deny any allegation in the

Amended Complaint; and (iv) stipulates solely for purposes of exceptions to discharge set forth in

Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the Amended

Complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty

or other amounts due by Defendant under the Final Judgment or any other judgment, order,

consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).  If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket.  Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action.  For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

14.     Defendant agrees to waive all objections, including but not limited to, constitutional, timeliness, and procedural objections, to the administrative proceeding that will be instituted when the Final Judgment is entered.

15.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

16.     Defendant agrees that this Court shall retain jurisdiction over this matter for the

purpose of enforcing the terms of the Final Judgment.


Dated: _____                    _____
                                            Jeremy Shor

       On _____, 2023, _____, a person known to me,
personally appeared before me and acknowledged executing the foregoing Consent.



                              _____
                              Notary Public

MARINA ZAVULUNOVA
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01ZA6181785
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES FEBRUARY 11, 2024
                              My Commission Expires:

# Exhibit A

M4MBAHUP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                              18 Cr. 328 (KPF)

ANILESH AHUJA and JEREMY SHOR,


                    Defendants.

                                                Sentence
------------------------------x

                                                New York, N.Y.
                                                April 22, 2022
                                                11:00 a.m.


Before:


                    HON. KATHERINE POLK FAILLA,

                                                District Judge

                          APPEARANCES

DAMIAN WILLIAMS
        United States Attorney for the
        Southern District of New York
BY:  ANDREA M. GRISWOLD
        DANIEL M. GITNER
        Assistant United States Attorneys

PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP (NYC)
        Attorneys for Defendant Ahuja
BY:  RICHARD C. TARLOWE
        ROBERTO FINZI
            -AND-
PAUL WEISS (NY)
        Attorneys for Defendant Ahuja
BY:  DAVID FRIEDMAN

M4MBAHUP

APPEARANCES (Continued)

KIRKLAND & ELLIS LLP (NYC)
     Attorneys for Defendant Ahuja
BY:  JOHN P. DEL MONACO

WEDDLE LAW PLLC
     Attorneys for Defendant Shor
BY:  JUSTIN S. WEDDLE
     JULIA I. CATANIA

Also Present: Todd Kaneshiro, FBI Special Agent

M4MBAHUP

```
 1              (Case called)
 2              MS. GRISWOLD:  Good morning, your Honor.
 3              Andrea Griswold for the government.
 4              Mr. Gitner will introduce himself.  We are also joined
 5    by Special Agent Todd Kaneshiro.
 6              MR. GITNER:  Good morning, your Honor.
 7              David Gitner for the government.
 8              THE COURT:  Good morning.  Thank you. We have a number
 9    of folks introducing themselves.
10              Mr. Tarlowe, I'll begin with you being you were the
11    first to stand.
12              MR. TARLOWE:  Yes, your Honor.
13              Richard Tarlowe and Roberto Finzi on behalf of
14    Mr. Ahuja.  Mr. Ahuja is here as well, and we're also joined by
15    our colleague David Friedman, as well as John Del Monaco from
16    Kirkland & Ellis.
17              THE COURT:  Good morning to each of you.
18              Mr. Ahuja, good morning to you, sir.
19              DEFENDANT AHUJA:  Good morning, your Honor.
20              THE COURT:  Mr. Weddle.
21              MR. WEDDLE:  Good morning, your Honor.
22              Justin Weddle and Julia Catania from Weddle Law PLLC,
23    and I'm sitting next to my client Mr. Shor.
24              THE COURT:  Thank you.  Mr. Shor, good morning to you
25    as well.
```

M4MBAHUP

1      I appreciate you all wearing masks because of your
2  proximity to each other.  I'm far enough away from you that I'm
3  not wearing one.

4      Let me talk to you first about a first couple of
5  housekeeping matters, please.  With the masks and with a
6  recent, I'll put in quotes, upgrade to the technology of this
7  courtroom, it is sometime difficult to hear what's going on.
8  If you find it easier to remain seated when you are speaking
9  with me, that's fine by me, just please bring the microphone
10  close to you.

11      Mr. Tarlowe and Mr. Finzi, it was my expectation that
12  I would be conducting a plea proceeding at the same time as to
13  both defendants.

14      Is that your understanding as well?

15      MR. TARLOWE:  Yes, your Honor.  We think that makes
16  sense.

17      THE COURT:  Mr. Weddle, the same?

18      MR. WEDDLE:  Yes, your Honor.

19      THE COURT:  All right.  As many hundreds of pleas as I
20  have done as a judge and a prosecutor, this is my first
21  11(c)(1)(C) plea.  And in hoping to get it right, I looked at
22  some past ones and only found a transcript to one.  In that
23  case, the sentencing was all one just paragraph where the judge
24  just said, all right, basically go forward and say no more.

25      I'd like to have a sense from the parties as to degree

M4MBAHUP

1   to which I am speaking about the requirements of Rule 32 of the

2   Federal Rules of Criminal Procedure.  For example, there have

3   been PSRs prepared.  I believe there will be at least some to

4   them, and there will be certainly modifications to the

5   judgments in this case.  But if I can be colloquial with you,

6   how much Rule 32 do you want at sentencing?

7          For example, am I inquiring as to your client's

8   respective reviews of the PSR?  Will there be written -- or

9   excuse me, oral sentencing statements to me, or will the

10  parties be simply incorporating that which they said to me at

11  the original sentencing, plus whatever is embodied in the

12  respective plea agreement?

13         I just want to know because I don't want to -- I want

14  to do this correctly, and I know how to do a sentencing, but

15  this is an unusual sentencing to do.

16         Ms. Griswold, what is the government's contemplation

17  of what sentencing looks like in this case?

18         MS. GRISWOLD:  Thank you, your Honor.

19         We believe that the Court can rely on the record from

20  the prior proceeding and that we don't need a fulsome Rule 32

21  inquiry, so long as the defendants are in agreement with that

22  and are not requesting the inquiry be done again.  And we would

23  not expect to be advocating or arguing at length as to the

24  sentencing.

25         THE COURT:  At all?

M4MBAHUP

1          MS. GRISWOLD:  If your Honor would indulge us, we have

2     a very brief statement that I believe Mr. Gitner will offer

3     when we get there.

4          THE COURT:  I will keep that in mind.  Thank you.

5          Mr. Tarlowe, I should have asked.  You just happen to

6     be in my line of vision.  Am I directing the questions to you

7     or Mr. Finzi this morning?

8          MR. WEDDLE:  I think to me, your Honor.

9          THE COURT:  Thank you, then I just have, towards

10    sentencing?

11         MR. TARLOWE:  We're in agreement with the government.

12    We think it's appropriate for the Court to rely on the existing

13    record, and we don't think there's any need, unless the Court

14    has questions, which obviously we're happy to address, but

15    absent any additional questions, we don't think there's a need

16    to supplement the current record.

17         THE COURT:  Thank you.

18         Mr. Weddle.

19         MR. WEDDLE:  I agree with Mr. Tarlowe's position on

20    this.  And of course, I've spoken to Mr. Shor and he

21    understands he has a right to be heard, and our plan is to have

22    him not be heard here at the sentencing proceeding.  I think

23    we'll have to see what the government's statement is with

24    respect to sentencing, but we were planning to say nothing

25    beyond what's already in the record, your Honor.

M4MBAHUP

1        THE COURT:  Understood.  Perhaps what I'll do then is

2   I'll simply give you and your respective clients an opportunity

3   to be heard, understanding that you may waive that right.  And

4   I will ask for your assistance, it would be my preference to do

5   this particular proceeding once and not twice.  I imagine you

6   have the same views, so working together I'm sure we will get

7   this right.

8        Mr. Tarlowe, may I speak directly with your client?

9        MR. WEDDLE:  Yes, of course, your Honor.

10       THE COURT:  Thank you.

11       And, Mr. Weddle, may I speak directly with your

12  client?

13       MR. WEDDLE:  Yes, your Honor.

14       THE COURT:  Thank you.  I appreciate your standing.

15       Mr. Ahuja, begin withing you.  It is my understanding,

16  sir, that today you wish to enter a plea of guilty to Count

17  Three of the indictment in this case which charges you with

18  securities fraud.

19       It is that correct, sir?

20       DEFENDANT AHUJA:  Yes, it is.

21       THE COURT:  And that plea today, I understand, is

22  going to be entered pursuant to a plea agreement with the

23  government.  Is that also correct?

24       DEFENDANT AHUJA:  Yes.

25       THE COURT:  Thank you.  You're welcome to be seated.

M4MBAHUP

1          Mr. Shor, the same two questions.  You and I both know

2     about the trial.  We were both there.  It is my understanding,

3     sir, that in lieu of a second trial in this case, it is your

4     wish today to plead to Count Three of the indictment charging

5     you with securities fraud.  Am I correct

6          DEFENDANT SHOR:  Yes, your Honor.

7          THE COURT:  And, Mr. Shor, is that plea entered

8     pursuant to a plea agreement?  It will be entered pursuant to a

9     written plea agreement with the government.

10          DEFENDANT SHOR:  Yes, your Honor.

11          THE COURT:  You're also welcome to be seated.

12     Gentleman, before I can accept your guilty pleas, I need to you

13     ask a series of questions.

14          Let me speak to you about what purposes generally

15     these questions serve.  The first thing that I would like to do

16     is to ensure that you are competent to enter a plea of guilty,

17     that you can see and hear and understand what is going on in

18     this courtroom.

19          After that, I would like to review with you the rights

20     that you have and that you would be waiving or giving up by

21     entering a guilty plea.  I'd like to speak to you about the

22     charge to which each of you proposes to plead guilty, and the

23     defenses -- excuse me, the penalties associated with that

24     charge, and then I intend to ask each of you what it is you did

25     that makes you believe that you are guilty of this offense.

M4MBAHUP

```
 1          What I'd like to underscore today, because I know you
 2   all for so many years, I think I can say this easily, most
 3   important thing is that you understand what is happening in
 4   this courtroom.  If any question that I ask you is confusing or
 5   if for any reason either of you wishes to speak with your
 6   attorney, just let me know and we'll pause and we'll take
 7   whatever time you need to be clear as to the question that I'm
 8   asking or the response that you wish to give.
 9          If I don't hear from you, I will understand that you
10   are understanding my question and are prepared to answer.
11          What I'm going to do now is I'm going to have my
12   deputy Ms. Noriega swear both of you in. Thank you.
13          (Defendants sworn)
14          THE DEPUTY CLERK:  Mr. Ahuja, please state and spell
15   your full name.
16          DEFENDANT AHUJA:  Anilesh Ahuja, A-N-I-L-E-S-H,
17   A-H-U-J-A.
18          THE DEPUTY CLERK:  Thank you.
19          Mr. Shor, please state and spell your full name.
20          DEFENDANT SHOR:  Jeremy Andrew Shor, J-E-R-E-M-Y,
21   A-N-D-R-E-W, last name Shor, S-H-O-R.
22          THE COURT:  Mr. Ahuja and Mr. Shor, the significance
23   of my having placed you under oath is that if you answer any of
24   the questions that I'm about to ask you falsely, you may be
25   prosecuted for a separate offense known as perjury.
```

M4MBAHUP

 1              As I hinted at I hope at the beginning of this

 2    proceeding, my intent is to ask these questions once and then

 3    turn to each of you.

 4              And Mr. Shor, I know you'll take no offense, I'm

 5    looking at Mr. Ahuja first because he's on my left.  If the

 6    roles were reversed, I'd look at you first.  I really don't

 7    think you care enough being the first or second person to

 8    answer, and I appreciate you nodding that you do not.

 9              Mr. Ahuja, do you understand the significance of being

10    placed under oath?

11              DEFENDANT AHUJA:  Yes.

12              THE COURT:  Mr. Shor?

13              DEFENDANT SHOR:  I do, your Honor.

14              THE COURT:  And again, I take no offense if you wish

15    to remain seated, so long as the microphones are brought closer

16    to you.  I will let you decide what is most comfortable for

17    you.  All that I care about and that the reporter cares about

18    is that we hear you.

19              Mr. Ahuja, how old are you?

20              DEFENDANT AHUJA:  Fifty-four.

21              THE COURT:  How far did you go in school, sir?

22              DEFENDANT AHUJA:  I have undergrad degree in

23    economics.

24              THE COURT:  Mr. Shor, how old are you, sir?

25              DEFENDANT SHOR:  I'm 50 years old.

M4MBAHUP

1    THE COURT:  And how far did you go in school, sir?

2    DEFENDANT SHOR:  I have a Ph.D.

3    THE COURT:  This question or this discussion is really

4    directed more to counsel.  Counsel, in connection with each of

5    the sentencings in this case, I was given information about

6    medical and/or mental health issues regarding each of the

7    defendants in this case.

8    Assuming you agree, I would not actually require them

9    to site any condition they may have on the record.  What I

10   would do instead is to recognize that I have looked at and

11   refreshed my recollection as to any medical or mental health

12   conditions they may have cited to me in connection with their

13   sentencing, and simply to ask whether as a result of those

14   conditions or any medication they are taking for them, they

15   have any difficulty seeing, hearing or understanding.

16   Mr. Tarlowe, is that acceptable to you?

17   MR. TARLOWE:  Yes, your Honor, it is.

18   THE COURT:  Mr. Weddle?

19   MR. WEDDLE:  Yes, your Honor.

20   THE COURT:  Thank you.

21   Mr. Ahuja, you know about any medical or mental health

22   conditions that you may have and the medications that you are

23   taking for them.  My question to you this morning, sir, is

24   whether any of those conditions or the medications you may take

25   for them causes you any difficulty in seeing or hearing or

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M4MBAHUP

1   understanding these proceedings?

2          DEFENDANT AHUJA:  No, your Honor.

3          THE COURT:  Mr. Shor, the same question.  Is there any

4   condition that you have or medication that you are taking that

5   impairs in any way your ability to see or hear or understand

6   these proceedings?

7          DEFENDANT SHOR:  No, your Honor.

8          THE COURT:  Mr. Ahuja, have you ever been treated or

9   hospitalized for any form of addiction, including drug or

10  alcohol addiction?

11         DEFENDANT AHUJA:  No, your Honor.

12         THE COURT:  Mr.  Shor?

13         DEFENDANT SHOR:  I have, your Honor.

14         THE COURT:  And is there anything about -- right now

15  today, is there anything about any treatment protocol you may

16  have received in the past that would impair your ability to

17  see, to hear or to understand what is happening today?

18         DEFENDANT SHOR:  There is not, your Honor.

19         THE COURT:  Thank you.

20         Mr. Ahuja, in the past two days, have you taken any

21  drug or medicine or pill that would impair your ability to

22  understand these proceedings?

23         DEFENDANT AHUJA:  No, your Honor.

24         THE COURT:  Mr. Shor, the same question?

25         DEFENDANT SHOR:  No, your Honor.

M4MBAHUP

1          THE COURT:  Mr. Ahuja, is your mind clear this

2    morning, sir?

3          DEFENDANT AHUJA:  Yes, your Honor.

4          THE COURT:  You understand what is happenings in these

5    proceedings?

6          DEFENDANT AHUJA:  Yes, your Honor.

7          THE COURT:  Mr. Shor, is your mind clear today, sir?

8          DEFENDANT SHOR:  Crystal, your Honor.

9          THE COURT:  And, sir, do you understand what is

10   happening in these proceedings?

11         DEFENDANT SHOR:  I do, your Honor.

12         THE COURT:  Mr. Tarlowe, have you had a sufficient

13   opportunity along with your colleagues to discuss this matter

14   with Mr. Ahuja?

15         MR. TARLOWE:  Yes, your Honor, we have.

16         THE COURT:  Do you believe he understands the rights

17   that he has and would be waiving by entering a plea of guilty?

18         MR. TARLOWE:  Yes.

19         THE COURT:  Do you believe him capable of

20   understanding the nature of these proceedings?

21         MR. TARLOWE:  Yes.

22         THE COURT:  Mr. Tarlowe, do you have any doubt as to

23   Mr. Ahuja's competence to enter a plea of guilty if that's what

24   he wishes to do?

25         MR. TARLOWE:  No, your Honor.

M4MBAHUP

1    THE COURT:  Mr. Weddle, have you had a sufficient

2    opportunity along with your colleague to discuss this matter

3    with Mr. Shor?

4    MR. WEDDLE:  Yes, your Honor.

5    THE COURT:  Do you believe he understands the rights

6    that he has and would be waiving by entering a plea of guilty?

7    MR. WEDDLE:  Yes, your Honor.

8    THE COURT:  Do you believe he is capable of

9    understanding these proceedings?

10    MR. WEDDLE:  Yes, your Honor.

11    THE COURT:  If your client wishes to plead guilty, do

12    you have any doubt as to his competence to do so?

13    MR. WEDDLE:  I do not, your Honor.

14    THE COURT:  Ms. Griswold, do you have any doubt as to

15    either defendants' competence to plead guilty if he wishes to

16    do so?

17    MS. GRISWOLD:  I do not.

18    THE COURT:  Mr. Ahuja and Mr. Shor, based on our

19    discussions this morning, which would include both your answers

20    to my questions and my observations of your demeanor here in

21    court, and based as well on the conversations that I've had

22    with your attorneys and with the attorney for the government, I

23    find that you are fully competent to enter an informed plea of

24    guilty if you wish to do so.

25    I'm going to ask you a few questions about the

M4MBAHUP

1    indictment in this case.  And let me explain to both of you

2    that from time to time I will be asking about discussions that

3    you've had with your attorney.

4           When I do so, I'm not asking for the details of those

5    communications.  I'm not trying at all to invade the

6    attorney/client privilege.  What I'm doing is trying to ensure

7    that certain topic matters were covered by your attorney with

8    you, so please keep that in mind when I ask these questions.

9           I begin by asking, Mr. Ahuja, have you read the

10   indictment in this case?

11          DEFENDANT AHUJA:  Yes, your Honor.

12          THE COURT:  Mr. Shor?

13          DEFENDANT SHOR:  I have, your Honor.

14          THE COURT:  And have you, Mr. Ahuja, had the

15   sufficient opportunity to speak with your attorney about the

16   charge to which you intend to plead guilty and any defenses

17   that you may have to that charge?

18          DEFENDANT AHUJA:  Yes, your Honor.

19          THE COURT:  Mr. Shor?

20          DEFENDANT SHOR:  Yes, your Honor.

21          THE COURT:  Without giving me the details of the

22   communication, has your attorneys explained to you the

23   consequences of entering a plea of guilty?

24          DEFENDANT AHUJA:  Yes, your Honor.

25          DEFENDANT SHOR:  Yes, your Honor.

M4MBAHUP

1          THE COURT:  Are you satisfied with your attorneys'

2    representation of you in this matter?

3          DEFENDANT AHUJA:  Yes, your Honor.

4          DEFENDANT SHOR:  Yes, your Honor.

5          THE COURT:  What I will do now, gentleman, is to speak

6    with you about certain Constitutional rights that you have and

7    that you would be waiving or giving up by entering a guilty

8    plea.

9          I appreciate your attention thus far, and I imagine

10   you will continue to pay attention, and please let me know if

11   there's anything that is unclear or any reason why you wish to

12   speak with your attorneys before answering.

13          Under the Constitution and laws of the United States,

14   you have the right to continue with your plea of not guilty to

15   all of the charges contained in the indictment.

16          Do you understand that, Mr. Ahuja?

17          DEFENDANT AHUJA:  Yes, your Honor.

18          THE COURT:  Mr. Shor?

19          DEFENDANT SHOR:  Yes, your Honor.

20          THE COURT:  If you continued with your plea of not

21   guilty, you would be entitled to a speedy and public trial by a

22   jury on the charges contained in the indictment in this case.

23   Do you understand that, sir?

24          DEFENDANT AHUJA:  Yes, your Honor.

25          DEFENDANT SHOR:  Yes, your Honor.

M4MBAHUP

1          THE COURT:  At a trial, you would be presumed to be
2    innocent, and the government would be required to prove you
3    guilty by competent evidence beyond a reasonable doubt before
4    you could be found guilty.
5          Do you understand that, sir?
6          DEFENDANT AHUJA:  Yes, your Honor.
7          DEFENDANT SHOR:  Yes, your Honor.
8          THE COURT:  A jury of 12 people would have to agree
9    unanimously that you were guilty of the offenses charged in the
10   indictment.  You would not have to prove that you were innocent
11   if you were to proceed to trial.
12         Do you understand that?
13         DEFENDANT AHUJA:  Yes, your Honor.
14         DEFENDANT SHOR:  Yes, your Honor.
15         THE COURT:  At a trial and at every stage of your
16   prosecution, you are entitled to the assistance of an attorney.
17   If and to the extent that you cannot afford one, one would be
18   appointed for you at public expense, free of cost to you in
19   order to represent you.
20         Do you understand that?
21         DEFENDANT AHUJA:  Yes, your Honor.
22         DEFENDANT SHOR:  I do, your Honor.
23         THE COURT:  At a trial, the witnesses for the
24   government would have to come to court and testify in your
25   presence.  Your attorney could cross-examine the witnesses for

M4MBAHUP

1   the government.  Your attorneys could object to evidence

2   offered by the government, and they could offer evidence on

3   your behalf if you wanted them to do so.

4         You would also have the right to have subpoenas issued

5   or other documents or process used in order to compel witnesses

6   to testify in your defense.

7         Do you understand that?

8         DEFENDANT AHUJA:  Yes, your Honor.

9         DEFENDANT SHOR:  I do, your Honor.

10        THE COURT:  At a trial, you would have a right to

11  testify if you wanted to do so, and you would have the right

12  not to testify if you wanted not to do so.

13        If you decided not to testify, no one, including the

14  jury, could draw any inference or suggestion of guilt from your

15  decision not to testify.

16        Do you understand that?

17        DEFENDANT AHUJA:  Yes, your Honor.

18        DEFENDANT SHOR:  Yes, your Honor.

19        THE COURT:  Another consequence of entering a guilty

20  plea in this particular fashion is that you waive or give up

21  your right to seek suppression or exclusion of the government's

22  evidence against you.  Are you aware of that?

23        DEFENDANT AHUJA:  Yes, your Honor.

24        DEFENDANT SHOR:  Yes, your Honor.

25        THE COURT:  Have you had a sufficient opportunity to

M4MBAHUP

discuss with your attorneys whether there is a basis to seek

suppression of part or all of the government's evidence against

you?

        DEFENDANT AHUJA:  Yes, your Honor.

        DEFENDANT SHOR:  Yes, your Honor.

        THE COURT:  Do you understand that if you were

convicted after a trial, you would have the right to appeal

from the jury's verdict?

        DEFENDANT AHUJA:  Yes, your Honor.

        DEFENDANT SHOR:  I do, your Honor.

        THE COURT:  Do you understand also that even now as

you are entering this guilty plea, you have the right to change

your mind and to proceed with your previously entered pleas of

not guilty and to go to trial on the charges contained in this

indictment?

        DEFENDANT AHUJA:  Yes, your Honor.

        DEFENDANT SHOR:  Yes, your Honor.

        THE COURT:  If you plead guilty and if I accept your

guilty plea, you will give up your right to trial and the other

rights that I've been discussing with you, other than your

right to an attorney, because you have the right to an attorney

whether you plead guilty or go to trial.

        But if you plead guilty and if I accept your guilty

plea, there will be no trial and I will enter a judgment of

guilty, and I will sentence you based on your plea today and

M4MBAHUP

1   whatever discussions we have regarding the sentencing

2   proceedings today.

3           Mr. Ahuja, do you understand that?

4           DEFENDANT AHUJA:  Yes, your Honor.

5           DEFENDANT SHOR:  I do, your Honor.

6           THE COURT:  If you plead guilty, there is also a

7   degree to which you will have to give up your right not to

8   incriminate yourself, because I will ask you questions later in

9   this proceeding to confirm for myself that you are pleading

10  guilty because you are in fact guilty of this offense charged

11  in Count Three and not for some other reason.  You will have to

12  admit and acknowledge your guilt of the offense charged in

13  Count Three.

14          Do you understand that?

15          DEFENDANT AHUJA:  Yes, your Honor.

16          DEFENDANT SHOR:  Yes, your Honor.

17          THE COURT:  Mr. Ahuja, do you understand the rights

18  that I have been discussing with you for the past few minutes?

19          DEFENDANT AHUJA:  Yes, your Honor.

20          THE COURT:  Is it your wish today to give up your

21  right for trial and the other rights that I've been discussing

22  with you and enter a plea of guilty?

23          DEFENDANT AHUJA:  Yes, your Honor.

24          THE COURT:  Mr. Shor, do you understand each of the

25  rights that I've been discussing with you?

M4MBAHUP

1          DEFENDANT SHOR:  I do, your Honor.

2          THE COURT:  Is it your wish today, sir, to give up

3     your right to trial and the other rights that I've been

4     discussing with you and enter a plea of guilty to Count Three

5     of the indictment.

6          DEFENDANT SHOR:  Yes, your Honor.

7          THE COURT:  I'm now speaking to both of you.  You are

8     charged in Count Three with securities fraud, and that is in

9     violation of Title 15, United States Code, Sections 78j(b) and

10    78ff, Title 17, Code of Federal Regulations, Section

11    240.10(b)(5), and Title 18, United States Code, Section 2. I

12    ask you to listen to me now because I'm going to outline for

13    you the elements of offense of securities fraud.

14          If this case were to proceed to trial, the government

15    would have to prove the following elements beyond a reasonable

16    doubt:

17          First, that in connection with the purchase or sale of

18    securities, you employed a scheme, device or artifice to

19    defraud or made an untrue statement of a material fact or

20    omitted to state a material fact which made what was said under

21    the circumstances misleading, or engaged in an act, practice or

22    course of business that operated or would operate as a fraud or

23    deceit upon a purchaser or seller.

24          Second, that you acted knowingly, willfully and with

25    the intent to defraud; and third, that you knowingly used or

M4MBAHUP

1  caused to be used any means or instruments of transportation or

2  communication in interstate commerce or the use of the mails in

3  furtherance of the fraudulent conduct.

4      The government would also be required to prove venue

5  by a preponderance of the evidence.

6      Do you understand, Mr. Ahuja, that if you were to go

7  to trial, that is what the government would have to prove at

8  trial?

9      DEFENDANT AHUJA:  Yes, your Honor.

10     THE COURT:  Mr. Shor?

11     DEFENDANT SHOR:  Yes, your Honor.

12     THE COURT:  What I would like to do now, gentleman, is

13 to speak to you about the maximum possible penalties that are

14 associated with Count Three of the indictment, and I'm using

15 the term "maximum" deliberately.  I mean the most that could

16 possibly be imposed.  This is not to suggest that this is what

17 you're necessarily going to receive, but I just want to make

18 sure you understood what the maximum penalties were.  And I'm

19 going to begin by discussing possible restrictions on your

20 liberty.

21     The maximum term of imprisonment for the offense

22 charged in Count Three is 20 years imprisonment.

23     Do you understand that, Mr. Ahuja?

24     DEFENDANT AHUJA:  Yes, your Honor.

25     THE COURT:  Mr. Shor, do you understand that?

M4MBAHUP

1            DEFENDANT SHOR:  Yes, your Honor.

2            THE COURT:  Any term of imprisonment could be followed

3    by a term of up to three years of supervised release, and let

4    me just explain to you both what I mean when I use the term

5    "supervised release."  It is a period of time where one is

6    subject to supervision by the United States probation office.

7    There would be terms and conditions of supervised release that

8    one would have to follow.

9            If the person were to violate the terms and conditions

10   of supervised release, the possibility exists that that person

11   could be sent to prison without a jury trial to serve time on

12   the violation of supervised release.  If that were the case,

13   they would get no credit for the time that had served on any

14   prior prison sentence.  They would get no credit for time spent

15   on post-release supervision in compliance with the terms of

16   supervised release.

17           Mr. Ahuja, do you understand what I'm saying on the

18   concept of supervised release?

19           DEFENDANT AHUJA:  Yes, your Honor.

20           THE COURT:  Mr. Shor?

21           DEFENDANT SHOR:  I do, your Honor.

22           THE COURT:  Please understand as well, there is no

23   parole in the federal system.  If you were sentence to a term

24   of imprisonment, you would not be released early on parole.

25   There is an opportunity to earn credit for good behavior and

M4MBAHUP

1    that amount tends to vary, so I say as an average that for

2    terms of imprisonment, one would have to serve approximately 85

3    percent of the term to which they are sentenced.

4               Mr. Ahuja, do you understand that?

5               DEFENDANT AHUJA:  Yes, your Honor.

6               THE COURT:  Mr. Shor?

7               DEFENDANT SHOR:  I do, your Honor.

8               THE COURT:  In addition to potential restrictions on

9    your liberty, the maximum possible punishment also includes

10   certain financial penalties.

11              The maximum allowable fine is the greatest of these

12   three things; $5 million, twice the gross pecuniary gain

13   derived from the offense, or twice the gross pecuniary loss to

14   persons other than yourself.  I must order a mandatory special

15   assessment of $100 per count of conviction.

16              In certain circumstances, there may be restitution

17   obligations if there are individuals who are injured or

18   entities that are injured, and there are other circumstances of

19   forfeiture obligations. I do not believe either is appropriate

20   today.

21              Mr. Ahuja, do you understand that these potential

22   restrictions on your liberty and these potential financial

23   penalties are the maximum possible penalties associated with

24   the Count Three offense?

25              DEFENDANT AHUJA:  Yes, your Honor.

M4MBAHUP

1          THE COURT:  Mr. Shor?

2          DEFENDANT SHOR:  Yes, your Honor.

3          THE COURT:  Gentleman, I'm going to ask you questions.

4   And my experience is that not all of these questions are

5   applicable to everyone.  I do want to make sure, however, that

6   I ask them, and I will begin by asking, Mr. Ahuja, are you a

7   United States citizen?

8          DEFENDANT AHUJA:  Yes, I am.

9          THE COURT:  Were you born here or naturalized?

10          DEFENDANT AHUJA:  I was naturalized, your Honor.

11          THE COURT:  In certain circumstances, though I don't

12   believe in this one, a guilty plea can have adverse immigration

13   consequences, including the possibility of detention by

14   immigration authorities or removal or deportation from the

15   United States.

16          Have you had an opportunity to discuss with your

17   attorneys whether there might be any immigration consequences

18   as result of this guilty plea?

19          DEFENDANT AHUJA:  I have, your Honor.

20          THE COURT:  Is it still your wish today, sir, to plead

21   guilty?

22          DEFENDANT AHUJA:  Yes, your Honor.

23          THE COURT:  Mr. Shor, are you a United States?

24          DEFENDANT SHOR:  I am, your Honor.

25          THE COURT:  Were you born here, sir?

M4MBAHUP

1          DEFENDANT SHOR:  I was, your Honor.

2          THE COURT:  Then I will ask you a different set of

3    questions, and you're welcome to stand if you like and I'll

4    just ask Mr. Ahuja them in a moment.

5          Do you understand that as a result of this guilty

6    plea, you could lose certain valuable civil rights, to the

7    extent that you have them today or could obtain them in the

8    future.  These would include the right to vote, the right to

9    hold public office, the right to serve on a jury and the right

10   to possess a firearm.

11         DEFENDANT SHOR:  I do, your Honor.

12         THE COURT:  Thank you.  You're welcome to be seated,

13   sir.

14         Mr. Ahuja, you just heard me review with Mr. Shor the

15   potential civil consequences of a guilty plea.  Were you able

16   to hear me, sir?

17         DEFENDANT AHUJA:  Yes, your Honor.

18         THE COURT:  Are you aware that as a result of your

19   guilty plea, you also might lose these civil rights?

20         DEFENDANT AHUJA:  Yes, your Honor.

21         THE COURT:  And it is still your wish to go forward?

22         DEFENDANT AHUJA:  Yes, your Honor.

23         THE COURT:  Mr. Tarlowe, it is my understanding that

24   there are no other outstanding prosecutions of Mr. Ahuja; am I

25   correct?

M4MBAHUP

1          MR. TARLOWE:  Yes, your Honor, that is correct.

2          THE COURT:  Is there an outstanding SEC proceeding?

3          MR. TARLOWE:  There is, Judge.

4          THE COURT:  Thank you.

5          And, Mr. Weddle, the same two questions?

6          MR. WEDDLE:  Same answers, your Honor.

7          THE COURT:  Thank you.

8          Mr. Ahuja, please understand that resolving the case

9    before me doesn't resolve any other matters that you may have,

10   including any parallel proceedings in this case.

11         Do you understand that, sir?

12         DEFENDANT AHUJA:  Yes, your Honor.

13         THE COURT:  And, Mr. Shor, do you understand?

14         DEFENDANT SHOR:  I do, your Honor.

15         THE COURT:  Mr. Ahuja, this is a bit of an unusual

16   case given the manner in which it is being resolved, but I

17   would still like to know whether you have discussed the process

18   of sentencing with your attorneys?

19         DEFENDANT AHUJA:  Yes, I have, your Honor.

20         THE COURT:  And you and I have already been together

21   for a prior sentencing proceeding, so my understanding is that

22   you are familiar with the obligations that I have and the

23   considerations that I undertake in imposing an individualized

24   sentence; is that correct?

25         DEFENDANT AHUJA:  Yes, your Honor.

M4MBAHUP

 1            THE COURT:  Mr. Shor, do you recall as well speaking

 2      with your attorneys about the process of sentencing?

 3            DEFENDANT SHOR:  I do, your Honor.

 4            THE COURT:  And we have gone through the process once

 5      before, so you have familiarity with my obligations and the

 6      role that each of us plays at sentencing?

 7            DEFENDANT SHOR:  I do, your Honor.

 8            THE COURT:  Mr. Ahuja, I understand that there is a

 9      written plea agreement entered into between you and your

10      attorneys and the attorneys for the government; is that

11      correct?

12            DEFENDANT AHUJA:  Yes, your Honor.

13            THE COURT:  In connection with this proceeding, I've

14      been given a letter dated March 9 of 2022 from Ms. Griswold and

15      Mr. Gitner to your attorneys Mr. Finzi and Mr. Tarlowe and

16      Mr. Friedman.  It has the docket number of this case, your

17      name, and I'm going to hold up a copy, but I'll ask, do you

18      have a copy of that document, sir?

19            DEFENDANT AHUJA:  Yes, I do, your Honor.

20            THE COURT:  I can see it from here.  We see it is the

21      same thing, sir.  I'm marking my copy as Court Exhibit 1 just

22      so that you understand.

23            The copy that I have, sir, has six pages.  Perhaps

24      yours also has six pages?

25            DEFENDANT AHUJA:  Yes, it does, your Honor.

M4MBAHUP

1          THE COURT:  Can I ask you please to turn to page 6,

2   sir?

3          DEFENDANT AHUJA:  I'm there, your Honor.

4          THE COURT:  On the version that I have, I have four

5   signatures.  Does your page 6 also have four signatures on it,

6   sir?

7          DEFENDANT AHUJA:  Yes, it does, your Honor.

8          THE COURT:  Is one of those signatures yours?

9          DEFENDANT AHUJA:  Yes, it is, your Honor.

10          THE COURT:  Did you sign this document in or about the

11   last day or so in the presence of your attorney?

12          DEFENDANT AHUJA:  Yes, your Honor.

13          THE COURT:  Before you signed this document, did you

14   read it?

15          DEFENDANT AHUJA:  Yes, I did, your Honor.

16          THE COURT:  If you had any questions about it, were

17   you able to resolve those issues with your attorney?

18          DEFENDANT AHUJA:  Yes, your Honor.

19          THE COURT:  At the time you signed this document, did

20   you understand what it provided?

21          DEFENDANT AHUJA:  Yes, your Honor.

22          THE COURT:  And just to reiterate, you understand this

23   to be your written plea agreement with the government?

24          DEFENDANT AHUJA:  Yes, your Honor.

25          THE COURT:  Mr. Shor, I also have a letter also dated

M4MBAHUP

1   March 9 of 2022, to Mr. Weddle from the United States

2   Attorney's Office, Ms. Griswold and Mr. Gitner.  It contains as

3   well a reference to your name and the docket number in this

4   case.  Do you have a copy of that document in front of you,

5   sir?

6           DEFENDANT SHOR:  I do, your Honor.

7           THE COURT:  I see that is the same document.

8           Sir, is this your plea agreement with the government?

9           DEFENDANT SHOR:  I believe so, your Honor.

10          THE COURT:  I'll ask you to confirm with your attorney

11  that it is.

12          DEFENDANT SHOR:  It is, your Honor.

13          THE COURT:  Sir, I've marked this as Court Exhibit 2,

14  and I'm going to ask you, please, to turn to the last page of

15  this document, which I see you are at already.  It is for both

16  of us page 6.

17          Are there four signatures on your version of this

18  document, sir?

19          DEFENDANT SHOR:  Yes, your Honor.

20          THE COURT:  Is one of them yours?

21          DEFENDANT SHOR:  Yes, your Honor.

22          THE COURT:  Did you sign this today in the presence of

23  your attorney?

24          DEFENDANT SHOR:  I did not, your Honor.

25          THE COURT:  Did you sign this yesterday, sir?

M4MBAHUP

1          DEFENDANT SHOR:  I signed it yesterday.

2          THE COURT:  I see that it was signed today.

3          Before you signed this document, did you read it?

4          DEFENDANT SHOR:  I did, your Honor.

5          THE COURT:  To the extent you had any questions about

6     it, were you able to resolve those by speaking with your

7     attorneys?

8          DEFENDANT SHOR:  Yes, your Honor.

9          THE COURT:  At the time that you signed this document,

10    did you understand its contents?

11         DEFENDANT SHOR:  I did, your Honor.

12         THE COURT:  Thank you.

13         One of the features of each of these agreements is

14    that you have agreed on the guidelines range that applies in

15    this case, and this is my understanding.  You are agreeing that

16    the guidelines range that's calculated at your prior sentencing

17    proceeding adjusted to a count for acceptance of responsibility

18    can be used for today's purposes.

19         Mr. Shor, do I understand that correctly?

20         DEFENDANT AHUJA:  Yes, your Honor.

21         THE COURT:  I'm sorry, Mr. Ahuja.  I knew I was going

22    to do that.  I won't do it again. Thank you, sir.  I'll look at

23    you and say the right name.

24         Is that in fact your understanding of this agreement?

25         DEFENDANT AHUJA:  Yes, your Honor.

M4MBAHUP

1          THE COURT:  Mr. Shor?

2          DEFENDANT SHOR:  Yes, your Honor.

3          THE COURT:  Thank you.

4          And so let me ask the parties, there's a discussion

5   about the accounting for acceptance of responsibility. Perhaps

6   this is an academic issue.  It was my intent to reduce by three

7   levels, because even though there was a trial in this case, I'm

8   being advised well before a second trial of the desire to plead

9   guilty.

10          But let me please ask counsel if they have a different

11  view as to the appropriate acceptance credit?

12          MS. GRISWOLD:  We agree, your Honor, it should be

13  three points.

14          THE COURT:  Mr. Tarlowe?

15          MR. TARLOWE:  We agree.

16          THE COURT:  And Mr. Weddle?

17          MR. WEDDLE:  We agree.

18          THE COURT:  Mr. Ahuja, the sentence guidelines were

19  previously calculated at 262 to 327 months.  With a three-level

20  reduction for acceptance of responsibility, they are

21  recalculated as 188 to 235 months.

22          At Mr. Shor's sentencing proceeding, the guidelines

23  were calculated as 168 to 210 months.  And with a three-level

24  reduction for acceptance of responsibility, they are now

25  recalculated as 121 to 151 months.

M4MBAHUP

1          Mr. Ahuja, in your plea agreement you and the

2     government have agreed upon a sentence, and that sentence is a

3     sentence of time served with no following term of supervised

4     release, no fine, no forfeiture and no restitution.

5          Is that your understanding of the sentence to which

6     you have agreed with the government?

7          DEFENDANT AHUJA:  Yes, it is, your Honor.

8          THE COURT:  Do you understand, sir, that because this

9     proceeding and this plea agreement are both being done under

10    Federal Rule of Criminal Procedure 11(c)(1)(C), I may accept or

11    reject your plea agreement.

12         Do you have that understanding?

13         DEFENDANT AHUJA:  Yes, your Honor.

14         THE COURT:  If I accept your plea agreement, I am

15    required to impose the sentence that you and the government

16    have agreed to and that I have just described.

17         Do you understand that, sir?

18         DEFENDANT AHUJA:  Yes, your Honor.

19         THE COURT:  Do you also understand that if I reject

20    the agreement, you would have the right to withdraw your guilty

21    plea?

22         DEFENDANT AHUJA:  Yes, your Honor.

23         THE COURT:  I also understand that you and the

24    government have agreed that if I were to reject your plea

25    agreement or you were to withdraw your guilty plea, the plea

M4MBAHUP

```
 1    agreement that we've been talking about and that I've marked as
 2    Court Exhibit 1 will become null and void.
 3              Do you understand that, sir?
 4              DEFENDANT AHUJA:  Yes, your Honor.
 5              THE COURT:  In your plea agreement, you are waiving
 6    your right to appeal or otherwise challenge a sentence of time
 7    served and a special assessment that is less than or equal to
 8    $100.
 9              In other words, if I sentence you to time served and
10    if I order a special assessment of $100 or something less than
11    that, you would have no right to appeal or otherwise challenge
12    those components of that sentence.
13              Do you understand that, sir?
14              DEFENDANT AHUJA:  Yes, your Honor.
15              THE COURT:  Mr. Shor, let me please turn to you.
16              You also have entered into a plea agreement pursuant
17    to the Federal Rule of Criminal Procedure 11(c)(1)(C), you and
18    the government have agreed upon the same sentence that I just
19    previewed with Mr. Ahuja, which is a sentence of time served,
20    no term of supervised release, no fine, no forfeiture and no
21    restitution.
22              Is that your understanding of the sentence to which
23    you and the government have agreed?
24              DEFENDANT SHOR:  It is, your Honor.
25              THE COURT:  And under Rule 11(c)(1)(C), I may accept
```

M4MBAHUP

1    or reject your plea agreement.

2            And just to reiterate what I said with Mr. Ahuja, if I

3    accept the plea agreement, I am required to impose the sentence

4    to which you and the government have agreed and that I've just

5    described.  And if I reject your plea agreement, you will have

6    the right to withdraw your guilty plea.

7            Do you understand each of those things, sir?

8            DEFENDANT SHOR:  I do, your Honor.

9            THE COURT:  Please also understand that you and the

10   government have agreed that if I reject your plea agreement or

11   if you were to withdraw your guilty plea, the plea agreement

12   will become null and void.

13           Do you understand that, sir?

14           DEFENDANT SHOR:  I do, your Honor.

15           THE COURT:  In your plea agreement -- and perhaps what

16   I should have done is just -- this is on page -- for me page 3

17   of the plea agreement.  It looks like page 3 for each of you.

18   It's the first of the other provisions, and it is a series of

19   waivers.  So perhaps I should have asked this.

20           Mr. Shor, have you read this paragraph of the plea

21   agreement?

22           DEFENDANT SHOR:  I have, your Honor.

23           THE COURT:  And you understand, sir, that in this

24   paragraph, you have waived your right to appeal or otherwise

25   challenge a sentence of time served and/or a special assessment

M4MBAHUP

1    that is less than or equal to $100.

2           So if I were to sentence you to time serve and order a

3    special assessment of $100 or less, you would have no right to

4    appeal or otherwise to challenge those components of your

5    sentence.  Is that correct?

6           DEFENDANT SHOR:  That's correct, your Honor.

7           THE COURT:  Mr. Ahuja, I should have asked you a

8    moment ago, sir, whether you understood these provisions.  I

9    could point them out to you in the agreement.  I see that

10   you're looking at them as I'm talking to you.

11          Do you know specifically the paragraph to which I was

12   referring when I asked you those questions

13          DEFENDANT AHUJA:  Yes, your Honor.

14          THE COURT:  Ms. Griswold, are there specific

15   provisions of this plea agreement that you would like me to

16   call to the attention of either defendant in this case?

17          MS. GRISWOLD:  No, your Honor, not other than what

18   you've already done with respect to the appellate waiver.

19          THE COURT:  All right.

20          Mr. Ahuja, does this plea agreement that I've marked

21   as Court Exhibit 1 constitute your complete and total

22   understanding of the entire agreement that you have with the

23   government?

24          DEFENDANT AHUJA:  Yes, your Honor.

25          THE COURT:  Sir, has anything been left out of this

M4MBAHUP

1  agreement to the best of your knowledge?

2          DEFENDANT AHUJA:  No, your Honor.

3          THE COURT:  Other than what's contained in this

4  agreement, has anyone made you any promise or offered you any

5  type of inducement in order to get you to sign this agreement

6  or to plead guilty in this case?

7          DEFENDANT AHUJA:  No, your Honor.

8          THE COURT:  Has anyone forced you or threatened you to

9  sign this agreement or to plead guilty in this case?

10          DEFENDANT AHUJA:  No, your Honor.

11          THE COURT:  Mr. Shor, does your written plea agreement

12  which has been marked as Court Exhibit 2 constitute your

13  complete and total understanding of the entire agreement that

14  you have with the government?

15          DEFENDANT SHOR:  It does, your Honor.

16          THE COURT:  To the best of your knowledge, sir, has

17  anything been left out?

18          DEFENDANT SHOR:  No, your Honor.

19          THE COURT:  Other than what's contained in this

20  agreement, has anyone made you any promise or offered you any

21  type of inducement in order to get you to sign this agreement

22  or to plead guilty here today?

23          DEFENDANT SHOR:  No, your Honor.

24          THE COURT:  Has anyone threatened you or forced you to

25  sign this agreement or to plead guilty here today?

M4MBAHUP

1          DEFENDANT SHOR:  No, your Honor.

2          THE COURT:  Mr. Ahuja, just in the interest of

3     completeness, we've been talking about various provisions of

4     the agreements and I see that in addition to the ones that I

5     specifically discussed with you, there is an agreement that the

6     parties have that if this plea were entered into and accepted,

7     there would be the withdrawal of certain appeals currently at

8     the United States Court Of appeals for the Second Circuit.

9          That is on page 2 of the agreement in the paragraph

10    that begins, "It is further agreed."  May I direct your

11    attention to that page, sir.  You're there.  Thank you.

12         Mr. Ahuja, is it in fact the case that upon acceptance

13    of the plea and this agreement by the district court, the

14    parties will be executing stipulations regarding the dismissal

15    of the two appeals or the withdrawal of the two appeals?

16         DEFENDANT AHUJA:  Yes, your Honor.

17         THE COURT:  Have I misstated it?

18         MS. GRISWOLD:  Yes. Both parties have already filed

19    stipulations in the Circuit so as to return jurisdiction to

20    your Honor.  The stipulations indicate that if the pleas are

21    not accepted, that the appeals can be re-filed, but at this

22    point they have been withdrawn.

23         THE COURT:  All right.

24         Mr. Tarlowe, do you agree?

25         MR. TARLOWE:  Yes, your Honor.

M4MBAHUP

1          THE COURT:  And Mr. Weddle, do you agree?

2          MR. WEDDLE:  Yes, your Honor.

3          THE COURT:  All right.  Mr. Weddle, given that, do I

4     still need to review this paragraph with your client?

5          MR. WEDDLE:  No, your Honor.

6          THE COURT:  Mr. Ahuja, at this time I would like you

7     to tell me in your own words what it is that you did that makes

8     you believe that you are guilty of Count Three in the

9     indictment.

10         I will ask you this favor, sir.  Again, just given the

11    acoustics of this courtroom, I'll ask you, please, to speak

12    into the microphone and to speak slower and louder than you

13    think you need to, and you may begin when you're ready.

14         MR. TARLOWE:  Your Honor, before Mr. Ahuja does that,

15    I would note for the Court what I think will be apparent to

16    your Honor, Mr. Ahuja is reading from a document that was

17    prepared with the assistance of counsel, but does reflect

18    Mr. Ahuja's own thoughts and words, and we also previously

19    shared this with the government as well.

20         THE COURT:  Okay.  Mr. Ahuja, I actually was going to

21    ask you that question.  Let me just confirm, sir.  Irrespective

22    of who wrote these notes down, they are in fact your thoughts?

23         DEFENDANT AHUJA:  Yes, your Honor, these are my

24    thoughts.

25         THE COURT:  I will hear them now.  Thank you.

M4MBAHUP

1      DEFENDANT AHUJA:  In or about 2008, I co-founded

2    Premium Point Investments, or PPI, where I served as chief

3    executive officer and chief investment officer.  As a member of

4    PPI's investment committee, I was generally aware of the marks

5    that were used to compute the net asset of PPI's funds.  I also

6    worked with others at PPI to report the net asset value to

7    investors based on the marks provided by PPI's traders.

8          Beginning in or around the fall of 2015, I came to

9    understand that there was a high probability that the net asset

10   value of the New Issue Opportunity Fund was not being

11   calculated through strict adherence by PPI's traders to PPI's

12   valuation policy.

13         Despite having that understanding, I continued

14   reporting the net asset value to investors and consciously

15   failed to investigate the possibility of non-compliance with

16   PPI's valuation policy in the New Issue Opportunity Fund.

17         As a result, between the fall of 2015 and early 2016,

18   I was aware that there was a high probability that the net

19   asset value of the New Issue Opportunity Fund was not being

20   calculated and reported to investors in accordance with PPI's

21   valuation policy, and I consciously avoided confirming that

22   fact.

23         THE COURT:  Sir, at the time that this was taking

24   place, where were your offices located?

25         DEFENDANT AHUJA:  On 56 and 5th.

M4MBAHUP

1       THE COURT:  At the time that you engaged in this

2   conduct, did you understand that what you were doing was wrong

3   and illegal?

4       DEFENDANT AHUJA:  I was aware.  I was aware that there

5   was a high probability that the NAV of the fund was being

6   calculated in a way that was not consistent with the

7   investors -- what the investors had been told, and it was wrong

8   for me not to follow-up on that.

9       THE COURT:  Mr. Ahuja, may I understand that in the

10  business of PPI and in the communications with investors, there

11  were ways in which interstate commerce or interstate wires were

12  implicated, either the use of wires to communicate this

13  information, telephone calls, things of that nature or the use

14  of national securities exchange?

15      DEFENDANT AHUJA:  Yes, your Honor.

16      THE COURT:  Which of those, please?

17      DEFENDANT AHUJA:  Telephone and emails.

18      THE COURT:  Mr. Tarlowe, do you know of any valid

19  defense that would prevail at trial or any reason why your

20  client should not be permitted to plead guilty?

21      MR. TARLOWE:  No, your Honor.

22      THE COURT:  Ms. Griswold, are there additional

23  questions that you would like me to ask of Mr. Ahuja?

24      MS. GRISWOLD:  No, your Honor.  We just note that we

25  also believe it's proper that your Honor consider the entire

M4MBAHUP

 1  factual record before the Court, including the evidence at the

 2  prior trial in determining whether or not there is a sufficient

 3  factual basis for the plea.

 4          THE COURT:  It is precisely for that reason that

 5  unless the parties ask me to do so, I'm not going to ask the

 6  government to outline for me the evidence it would present at

 7  trial, because we have in fact seen that evidence.  All right.

 8          Mr. Ahuja, do you understand that as I consider

 9  whether there's a sufficient factual record for a guilty plea

10  in this case, I may consider everything that you've said to me

11  right now, and I may consider the evidence that was presented

12  at trial?

13          DEFENDANT AHUJA:  Yes, your Honor.

14          THE COURT:  Mr. Tarlowe, do you agree that there is a

15  sufficient factual predicate for a guilty plea?

16          MR. TARLOWE:  Yes, your Honor.

17          THE COURT:  Do you know of any reason why I should not

18  accept your client's plea of guilty?

19          MR. TARLOWE:  No, your Honor.

20          THE COURT:  Ms. Griswold, do you agree that there is a

21  sufficient factual predicate for a guilty plea by Mr. Ahuja to

22  Count Three of the indictment?

23          MS. GRISWOLD:  I do, your Honor.

24          THE COURT:  If he wishes to plead guilty, is there any

25  reason why I should not accept it?

M4MBAHUP

1          MS. GRISWOLD:  No, your Honor.

2          THE COURT:  Mr. Ahuja, at this time do you wish to

3    enter a plea of guilty to Count Three of indictment S1:18 CR

4    328?

5          DEFENDANT AHUJA:  Yes, your Honor.

6          THE COURT:  Thank you.  You're both welcome to be

7    seated.

8          Mr. Shor, at this time I would like to hear from you

9    with respect to what it is you did that makes you believe that

10   you are guilty of the offense charged in Count Three of the

11   indictment.

12         May I ask, sir, do you also have notes to aid you in

13   speaking with me this morning?

14         DEFENDANT SHOR:  I do.

15         THE COURT:  Irrespective of who wrote them up, are

16   they your thoughts?

17         DEFENDANT SHOR:  They are my thoughts.

18         THE COURT:  I will ask you as I asked Mr. Ahuja,

19   please be mindful of the acoustical limitations of this room

20   and to speak louder and slower than you think you need to, and

21   please speak when you are ready, sir.

22         DEFENDANT SHOR:  Thank you, your Honor.

23         Between approximately April of 2014 and March of 2016,

24   I was a trader for the mortgage credit fund at Premium Point

25   Investments.

M4MBAHUP

1    The month-end net asset value, or NAV, of the mortgage

2 credit fund was an important measure of the fund's performance

3 and was disseminated to investors and potential investors

4 through the mail and interstate wire communications.

5    Beginning in or about the fall of 2015, as part of the

6 month-end NAV calculation process, I obtained pricing data

7 which resulted in an NAV I believed was too high.

8    I did two things which led to this result.

9    I pressured brokers to provide security specific marks

10 which were higher than where I thought they should have been.

11 I knew that brokers had an incentive to provide favorable marks

12 to me in the hopes of obtaining business in the form of trades.

13    Second, I obtained sector spreads I knew would result

14 in higher security specific prices, even though market bids for

15 the securities were decreasing, by using PPI's mid-level

16 pricing system, in which for some bonds half of the bid-ask was

17 combined with the bid side marks as a lever.

18    I believe that the valuations conveyed to the

19 investors exceeded my best estimate of the valuations for

20 certain of the bonds I traded.

21    I participated in these efforts despite thinking they

22 were wrong, and knowing that the increase valuations would be

23 conveyed to investors and potential investors and relied upon

24 them.  Thank you, your Honor.

25    THE COURT:  Thank you, sir.

M4MBAHUP

1      Mr. Shor, while you're standing, when you were having

2  these conversations with brokers, when you were engaged in the

3  process or your participation in calculating net asset values,

4  were you located at least in part in Manhattan?

5      DEFENDANT SHOR:  Yes, your Honor.

6      THE COURT:  And you heard me ask Mr. Ahuja about

7  whether wires, faxes, telephone calls, things of that nature,

8  were implicated by the communications in which he was involved.

9  In your communications with brokers, sir, regarding these net

10  asset values or in the dissemination of these net asset values

11  to investors, did that involve wires, emails, telephones,

12  things of that nature, sir?

13      DEFENDANT SHOR:  Yes, your Honor.

14      THE COURT:  Mr. Weddle, do you know of any valid

15  defense that would prevail at trial or any reason why your

16  client should not be permitted to plead guilty?

17      MR. WEDDLE:  There's no reason that my client should

18  not be permitted to plead guilty, your Honor.

19      THE COURT:  Ms. Griswold, are there additional

20  questions you would like me to ask of Mr. Shor?

21      MS. GRISWOLD:  No, your Honor.

22      THE COURT:  Mr. Weddle, you heard Ms. Griswold say

23  earlier that I might consider the trial record.  I don't know

24  that I need to because I believe that these allocutions

25  suffice, but do you have a view as to my ability to do that

M4MBAHUP

1    here?

2          MR. WEDDLE:  I agree that that is permitted, your

3    Honor.

4          THE COURT:  Mr. Weddle, do you agree that there is a

5    sufficient factual predicate for a guilty plea in this case?

6          MR. WEDDLE:  I do, your Honor.

7          THE COURT:  If your client wishes to plead guilty, is

8    there any reason why I should not accept it?

9          MR. WEDDLE:  There is not, your Honor.

10          THE COURT:  Ms. Griswold, the same two questions?

11          MS. GRISWOLD:  No reason not to accept it, your Honor.

12          THE COURT:  And there's a factual predicate?

13          MR. ROBINSON:  Yes, your Honor.

14          THE COURT:  Of course.  I should have asked you both

15    questions.

16          Mr. Shor, at this time do you wish to enter a plea of

17    guilty to Count Three of indictment S1:18 CR 328?

18          DEFENDANT SHOR:  I do, your Honor.

19          THE COURT:  Thank you, sir.  You may be seated.

20          Mr. Ahuja and Mr. Shor, because you have acknowledged

21    that you are in fact guilty as charged in Count Three of the

22    indictment, because I am satisfied that you are aware of your

23    rights, including your rights, your respective rights to go to

24    trial and that you're aware of the consequences of your plea,

25    including the range of penalties or the sentence in this case

M4MBAHUP

1    that may be imposed, I find that you are knowingly and

2    voluntarily pleading guilty.

3            I am accepting your guilty pleas, and I am entering a

4    judgment of guilty for each of you on Count Three of the

5    indictment.  It is my understanding that the parties today wish

6    to proceed to sentencing.

7            Mr. Tarlowe, is it sufficient for me to say that you

8    and your client have reviewed the presentence investigation

9    report in this case.  You are asking for the guidelines in that

10   report to be recalculated to reflect the acceptance of

11   responsibility credit, and that otherwise there's nothing else

12   to discuss with respect to the presentence investigation

13   report?

14           MR. TARLOWE:  Yes, your Honor.  I think that's all

15   correct, yes.

16           THE COURT:  Let me try and break it down because I

17   don't want to be confusing, you'll all let me know if these are

18   things that you think we simply do not have to discuss, but

19   we've had a sentencing.  There is a PSR.

20           Mr. Tarlowe, may I question your client specifically

21   on this?

22           MR. TARLOWE:  Yes, of course, your Honor.

23           THE COURT:  Mr. Ahuja, I've used the term "presentence

24   investigation report or PSR," do you know what I was speaking

25   of?

M4MBAHUP

1          DEFENDANT AHUJA:  Yes, your Honor.

2          THE COURT:  Do you recall reviewing it previously in

3     this case?

4          DEFENDANT AHUJA:  Yes, your Honor.

5          THE COURT:  I believe the parties are asking me to

6     recalculate the guidelines in light of the acceptance of

7     responsibility credit that you and Mr. Shor have each become

8     entitled to as a result of these guilty pleas.  I understand

9     that those will be changed, but do you have any other

10    objections to the presentence investigation report?

11         DEFENDANT AHUJA:  No, your Honor.

12         THE COURT:  Mr. Tarlowe?

13         MR. TARLOWE:  Your Honor, this is probably

14    unnecessary, but I think the only thing I just wanted to add is

15    that to the extent we objected previously to certain findings

16    in the presentence report, we're now waiving those objections;

17    however, we recognize that the Court has already ruled on

18    those, has already previously calculated the guidelines, and we

19    have no objection to the Court relying on those prior findings

20    and the prior guidelines calculation with the one adjustment

21    for acceptance of responsibility.

22         THE COURT:  Thank you.

23         Mr. Weddle, do you feel the same?

24         MR. WEDDLE:  Yes, your Honor.

25         THE COURT:  Thank you.

M4MBAHUP

1                And, Mr. Weddle, may I speak with Mr. Shor?

2                MR. WEDDLE:  Yes, your Honor.

3                THE COURT:  Mr. Shor, in our prior sentencing

4    proceeding there was a presentence investigation report that

5    was prepared.  You recall our discussions about it.  We've

6    had -- there were legal arguments and other arguments.  You

7    recall as well in the prior sentencing that I made certain

8    findings about the presentence investigation report.  Do you

9    have that recollection, sir?

10               DEFENDANT SHOR:  I do, your Honor.

11               THE COURT:  What I'm being asked to do now as a

12   consequence of the guilty plea I've just taken from you and

13   from Mr. Ahuja, is to modify my guidelines calculation to

14   reflect the acceptance of responsibility, but otherwise I'm not

15   planning on making further adjustments to the presentence

16   investigation report, except to the extent they relate to the

17   calculation of the guidelines.  Your prior objections are what

18   they were.

19               Are there any additional objections that you make to

20   the presentence investigation report, sir

21               DEFENDANT SHOR:  No, your Honor.

22               THE COURT:  Then accept as modified.  I am adopting

23   the presentence investigation report for each defendant as

24   previously done.  I will simply change the guidelines to

25   reflect the acceptance of responsibility.

M4MBAHUP

1    Ms. Griswold, I spoke with you earlier about a

2    statement in connection with sentencing.  I should also have

3    asked you whether the government has any objections.  I know

4    you've read the presentence investigation report.  I imagine

5    that you agree with my reflection of acceptance credit.  Are

6    there any other objections or modifications to the presentence

7    investigation report?

8        MS. GRISWOLD:  Just one modification.  I think

9    throughout it makes reference to Counts One through Four, and

10   it doesn't impact the guidelines calculation, but I think it

11   could be noted that the portions of the presentence report that

12   talk about the four counts and the convictions on the four

13   counts should be modified to note that the conviction here and

14   the sentence is just for Count Three.

15       THE COURT:  Thank you.

16       Mr. Tarlowe and then Mr. Weddle, I believe the

17   government's asking me to modify the presentence investigation

18   report to make clear that the conviction about which we are

19   speaking today is the product of today's guilty plea and not

20   the trial?

21       MR. TARLOWE:  We agree it makes sense to do that, your

22   Honor.

23       MR. WEDDLE:  We agree as well, your Honor.

24       THE COURT:  I'll do what I can to make that clear.

25   Thank you.

M4MBAHUP

1          Ms. Griswold, may I hear from you or from your

2    colleague in connection with sentencing?

3          MS. GRISWOLD:  Yes, I believe Mr. Gitner will speak.

4          MR. GITNER:  Thank you, your Honor.

5          I intend to be brief and non-controversial.  I do want

6    to thank your Honor for obviously paying very careful attention

7    to the submissions in this case.  I feel a little silly saying

8    that frankly because I know your Honor pays careful attention

9    to everything that comes before you, but I think it's worth

10   saying out loud in the context of this case.

11         And I also want to thank defense counsel for their

12   engagement in the discussions that led to where we are today,

13   and frankly the manner in which they engaged with us.  I also

14   wanted to say that out loud.

15         As your Honor indicated at the beginning of this

16   proceeding, we're sort of -- this is a somewhat not very unique

17   posture that we're in.  But despite that uniqueness as with all

18   cases, the resolution we believe should send the message that

19   we stand behind the prosecution and the strong message that its

20   already set.

21         The uniqueness and the unique posture of the case,

22   which includes, frankly amount other things, in fact the

23   substantial restitution that has already been paid, allows for

24   this disposition.  It brings finality through acceptance of

25   responsibility, which we always take very serious of course.

M4MBAHUP

1         It brings very serious felony convictions to the core

2    of the conduct alleged here.  It preserves needed resources

3    which are now pointed elsewhere, including within the private

4    fund space and elsewhere, and we believe it uniquely does all

5    of this within and consistent with Section 3553(a).

6         So again, thank your Honor for the careful way you've

7    considered this matter right up to this moment.  Frankly, that

8    said, I'll sit down and allow the proceeding to continue.  We

9    stand by the prosecution.

10        THE COURT:  Thank you very much.

11        Mr. Tarlowe, do you or does one of your colleagues

12   wish to speak in connection with sentencing?

13        MR. TARLOWE:  No, your Honor.

14        THE COURT:  May I speak directly with your client?

15        MR. TARLOWE:  Yes, your Honor.

16        THE COURT:  Mr. Ahuja, if you wish to speak with me in

17   connection with your sentencing, you are invited to do so.

18   You're not obligated to do so.

19        I do recall having spoken with you in connection with

20   the prior sentencing, and I do feel over these several years

21   that I do have a sense of you and this case.

22        If you would like to speak, you're invited.  If you

23   prefer not to, simply let me know that.

24        DEFENDANT AHUJA:  Given the circumstances, I prefer

25   not to speak.

M4MBAHUP

1            THE COURT:  Of course.

2            Mr. Weddle, is there anything you or your colleague

3      would like to say in connection with sentencing?

4            MR. WEDDLE:  May I have a moment, your Honor.

5            THE COURT:  Of course.

6            MR. WEDDLE:  Just very briefly, your Honor, and I

7      think to in a way echo in mirror image the statement made by

8      the prosecution, we do appreciate our ability to discuss the

9      matter with them and reach what I think is a result that

10     permits all the parties to essentially close the door on this

11     case.

12           We stand behind the way that we litigated this case

13     throughout and the defense, but we agree that this is a fair

14     resolution that should be accepted by your Honor.

15           THE COURT:  Mr. Shor, at this time if you wish to

16     speak with me in connection with your sentence, you are invited

17     to do so.  You are not obligated to speak with me, sir, and I

18     do recall our discussions at the prior sentencing proceeding,

19     but I want to give you that opportunity if you'd like to speak.

20           DEFENDANT SHOR:  Thank you, your Honor.  I couldn't

21     possibly be as eloquent as Mr. Weddle.  Thank you.

22           THE COURT:  I'm sure he appreciates that.

23           Thank you, sir.

24           DEFENDANT SHOR:  Otherwise, I don't wish to say

25     anything, your Honor.

M4MBAHUP

1          THE COURT:  All right.  Thank you.

2          My practice usually is to take a break at this time

3     having heard from the parties so that I can reflect

4     appropriately on what has been argued because I do not come out

5     on the bench with a sentence in mind.  Perhaps the defendants

6     in this case will recall that that is what I did with respect

7     to their sentencings, and then I will usually come out and

8     discuss with each defendant my rationale for the sentence

9     imposed and my hopes for their future.

10         We keep saying this is an unusual case.  This is an

11    unusual case.  There was a trial.  There was extensive

12    proceedings on both sides of that trial, including extensive

13    sentencing proceedings, where I think all arguments that could

14    be made were made.  And then there were of course the

15    posttrial, post-conviction proceedings that brought us to where

16    we are today, and so I don't think it is useful to take a

17    break.

18         I did want to say something.  I'm still not sure what

19    to say, so you'll excuse what comes out.  I've had this case

20    for four years and many of you, including in particular

21    Mr. Ahuja and Mr. Shor, have had the case for far longer.  And

22    many times in the past period of years, we've all worked very,

23    very hard, and we've done so, at least for some of us, because

24    we believe in the criminal justice system.  We believe in the

25    fairness of the process that is in place, and perhaps it may be

M4MBAHUP

1  that folks who are a party to this proceeding are or are not

2  fully satisfied with this resolution.

3        I do have confidence and comfort that everyone working

4  on this case has worked for justice and fairness.  And to the

5  extent you've done that, you've succeeded and you have

6  confirmed the fairness of the process.  Some of you will appear

7  before me again in the future.  Some of you I hope, Mr. Ahuja

8  Mr. Shor, will not.

9        I've learned something through this case, and I hope

10 that you have as well, and I hope that you can find some

11 satisfaction in what you've learned through this case.  And

12 with that, I will turn to the formal process of sentencing.

13       I will describe the sentence I intend to impose, but

14 give each time an opportunity to make legal objections before

15 the sentence is actually imposed.

16       I have considered as I must the factors set forth by

17 Congress in Section 3553(a), and they include the nature and

18 circumstances of the offense, the history and characteristics

19 of each of the defendants, the need for the sentence imposed to

20 reflect the seriousness of the offense, to promote respect for

21 the law, to provide a just punishment for the offense, to

22 afford adequate deterrence to criminal conduct, to protect the

23 public from further crimes by the defendant, to provide each

24 defendant with needed educational and vocational training,

25 medical care or other correctional treatment in the most

M4MBAHUP

1    effective manner.

2              I must consider the guidelines, and I've mentioned

3    that a few moments ago.  I must consider the need to avoid

4    unwarranted sentence disparities, among similarly situated

5    defendants.  And I need in some cases, though not in this one

6    because of other proceedings, to consider restitution to the

7    victims.

8              I mentioned earlier my guidelines calculations in this

9    case.  For Mr. Ahuja, they are an offense level -- an adjusted

10   offense level of 36, a criminal history category of I, a

11   resulting guideline range of 188 to 235 months.

12             With Mr. Shor, there's an offense level of 32.  A

13   criminal history category of I, and resulting guidelines range

14   of 121 to 151 months.

15             The parties have proposed to me an agreed upon

16   sentence that includes a sentence of time served, no imposition

17   of a term of supervised release, no fine, no forfeiture and no

18   restitution, and I am agreeing with each of the agreed upon

19   sentences to be imposed on each of Mr. Ahuja and Mr. Shor.

20             There was much reflection in coming to this decision,

21   and I did solicit additional briefing on the parties on the

22   propriety of such sentencings. I appreciate very much the

23   materials that you sent to me to give me insight that I was

24   missing into what is an appropriate sentence.

25             And so my intention is to vary downward and to impose

M4MBAHUP

1    on each of Mr. Ahuja and Mr. Shor sentences of time served with

2    no term of supervised release to follow, with no fine, no

3    forfeiture, and no restitution, but with the single $100

4    mandatory special assessment that I cannot avoid the imposition

5    of.

6              I say that there is no restitution, but as each side

7    knows from the plea agreement, there were extensive restitution

8    efforts in connection with sentencing and thereafter.  And so

9    to say there's no restitution is a little bit -- I don't mean

10   it to be misleading.  It has been addressed in other

11   proceedings.

12             Ms. Griswold, is there any reason why I may not impose

13   that sentence on each of Mr. Ahuja and Mr. Shor?

14             MS. GRISWOLD:  No, your Honor.

15             THE COURT:  Mr. Tarlowe.

16             MR. TARLOWE:  No, your Honor.  The only thing is that

17   I believe that Mr. Ahuja paid the special assessment after the

18   first sentencing.

19             THE COURT:  I will not make him pay -- to be clear,

20   and I know you all know this, if you've paid it already, you do

21   not have to pay it again.  I have that out there because I

22   didn't know if it was paid.

23             MR. TARLOWE:  Just to be clear, I believe it was paid,

24   but maybe if we could just say to the extent it's been paid,

25   that we'll get credit of what's already been paid.

M4MBAHUP

| | |
|---|---|
| 1 | THE COURT:  I completely agree. |
| 2 | MR. TARLOWE:  And hopefully we won't ask for a refund. |
| 3 | THE COURT:  I'll leave it to you to figure out the |
| 4 | other counts.  You deal with the Clerk's Office on that. |
| 5 | Mr. Weddle, the same? |

```
 1              THE COURT:  I completely agree.
 2              MR. TARLOWE:  And hopefully we won't ask for a refund.
 3              THE COURT:  I'll leave it to you to figure out the
 4    other counts.  You deal with the Clerk's Office on that.
 5    Mr. Weddle, the same?
 6              MR. WEDDLE:  I believe the same is true, and we'll ask
 7    for a refund.
 8              THE COURT:  Mr. Weddle, the larger question is, is
 9    there any legal reason why I may not impose this sentence?
10              MR. WEDDLE:  No, your Honor.
11              THE COURT:  Thank you.
12              Mr. Ahuja and Mr. Shor, please rise.
13              Gentleman, after thinking about this Section 3553(a)
14    factors and the sentencing guidelines as they apply to your
15    respective cases, and after thinking as well about the
16    arguments that have been made to me by your attorneys and by
17    the attorneys for the government in connection with sentencing,
18    I have calculated the guidelines as I have.  I have adopted the
19    presentence investigation reports as modified, and I am
20    imposing for each of you a sentence of time served with no term
21    of supervised release to follow, with no fine, with no
22    forfeiture, no additional restitution, additional to that
23    you've already arranged to pay, and with an obligation to pay
24    $100 special assessment to the extent that you have not paid
25    that already.
```

M4MBAHUP

1              Mr. Ahuja, do you understand the sentence that I have

2       imposed?

3              DEFENDANT AHUJA:  Yes, your Honor.

4              THE COURT:  Mr. Shor, do you understand the sentence I

5       have imposed?

6              DEFENDANT SHOR:  Yes, your Honor.

7              THE COURT:  Gentleman, please be seated.

8              To the extent that you have not waived this in any

9       plea agreement that you may have with the government, you have

10      the right to appeal from your conviction and from your

11      sentence.  If an appeal is something in which you are

12      interested, please speak with your attorneys because they

13      understand the process by which appeals are taken.

14             We've talked about this previously, there is generally

15      a two-week period after the filing of the written judgment for

16      the filing of the notice of appeal.  I imagine the written

17      judgment will be filed sometime early next week, but it may

18      take a little bit longer.

19             So if appeal is something in which you're interested,

20      you'll please speak with your attorneys.

21             Mr. Ahuja, do you understand that

22             DEFENDANT AHUJA:  Yes, your Honor.

23             THE COURT:  Mr. Shor, do you understand that?

24             DEFENDANT SHOR:  Yes, your Honor.

25             THE COURT:  Ms. Griswold, does the government move to

M4MBAHUP

| | |
|---|---|
| 1 | dismiss the open counts and the underlying counts? |
| 2 | MS. GRISWOLD:  Yes, your Honor. |
| 3 | THE COURT:  Motion to dismiss is granted. |
| 4 | Ms. Griswold, is there anything else we should be addressing in |
| 5 | today's proceeding? |
| 6 | MS. GRISWOLD:  May I have a moment, your Honor? |
| 7 | THE COURT:  Of course. |
| 8 | MS. GRISWOLD:  No, your Honor.  Thank you. |
| 9 | THE COURT:  Thank you very much to all of you. |
| 10 | Mr. Tarlowe, from your client's perspective, is there |
| 11 | anything else -- or Mr. Finzi, from your perspective, is there |
| 12 | anything else to address in today's proceeding? |
| 13 | MR. FINZI:  One housekeeping matter, your Honor.  We |
| 14 | have conferred with the government about having our client's |
| 15 | passport returned.  And one sort of touching aspect of what's |
| 16 | otherwise a very solemn proceeding, my client had made peace |
| 17 | with the fact that he would never see his father again in |
| 18 | India.  Now that he's able to, he intends to travel there on |
| 19 | Monday, so we've made a request to the government to get the |
| 20 | passport back as soon as possible. |
| 21 | MS. GRISWOLD:  I'm working on it, your Honor.  I have |
| 22 | been speaking with pretrial.  And now that I know the right |
| 23 | officer, I'm hoping we can get it back today. |
| 24 | THE COURT:  Do you need anything from me?  You have an |
| 25 | oral order to get it. |

M4MBAHUP

1          MS. GRISWOLD:  I will come if I need more back up, but

2     I think I will be able to track it down today.

3          THE COURT:  Reach out to my chambers, to

4     Mr. Patterson, if you need anything from me.

5          MS. GRISWOLD:  Thank you.

6          THE COURT:  Mr. Finzi, I thank you.

7          But other than that, sir, which I certainly do hope is

8     resolved today, anything else you'd like me to know?

9          MR. FINZI: No, your Honor. Thank you.

10          THE COURT:  Mr. Weddle?

11          MR. WEDDLE:  No, nothing, your Honor.

12          THE COURT:  All right.  I don't know that there's

13     anything else to say.  We've seemed to have said a lot today.

14     I wish you all well.  We are adjourned.

15          (Adjourned)

16

17

18

19

20

21

22

23

24

25